**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHRISTOPHER KING** | **CIVIL ACTION** |
| **VERSUS** | **NO.  10-1197** |
| **BURL CAIN, WARDEN** | **SECTION "S"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and State Procedural Background

The petitioner, Christopher King ("King"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  King was charged by bill of information in St.

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Tammany Parish with the first degree robbery of Terry Crawford, a cashier at a Chevron service station at the intersection of Gause Boulevard and Interstate 10 in Slidell, Louisiana.[3]

The record reflects that, on February 1, 2004, at approximately 5:00 p.m., Crawford was working at the Chevron service station.[4]  King was present in the store with Crawford, Alfred T. "Buck" McKinley, Sr., and several other customers.  They all had been engaged in casual conversation.  At some point, King retrieved a quart of beer and approached the register to purchase it.  When Crawford attempted to give him his change, King put his hand down toward the waistband of his pants and said, "give me all your money or I will shoot."  Crawford admittedly did not take King seriously at first.  She thought he was "teasing."  King reached over the counter and attempted to remove the cash from the register.  Crawford resisted and attempted to prevent him from grabbing the money.  A struggle ensued.  During the struggle, Crawford called out to McKinley, who had gone to use the restroom.  King eventually removed the cash from the register and fled.

Crawford immediately contacted the police.  Detective Shawn Maddox and Sergeant Kevin Simon of the Slidell Police Department arrived on the scene and utilized canine tracking to attempt to locate the perpetrator.  The dog tracked to the Value Travel Inn Motel parking lot near the store.  The dog lost track of the scent at a fence in the motel parking lot.  From the parking lot, Sergeant Simon observed a white male exit room 213 of the motel.  The man made eye contact with Sergeant Simon and then proceeded to walk towards the back of the motel.

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 3/8/04.

[4]The facts were taken from the unpublished opinion of the Louisiana  First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2006-KA-1994, pp. 3-4, 5/4/07; *see also*, *State v. King*, No. 2008-KA-0171, 2008 WL 2330014, at *1-2 (La. App. 1st Cir. Jun. 6, 2008); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2008-KA-0171, pp. 2-4, 6/6/08.

When the dog failed to track any further, the officers returned to the store to continue their investigation.  While viewing the surveillance footage, Sergeant Simon recognized the perpetrator as the man he had just seen exiting room 213 at the motel.  The officers returned to the motel and approached room 213.  The door to the room was partially ajar.  The officers announced their presence and demanded that any occupants of the room exit.  No one came out.  The officers looked inside to assure no one was there, and then they entered the room.  On a bed inside the room, Sergeant Simon observed a tan ball cap and a blue shirt with white writing on it.  He recognized these items as matching the clothing worn by the perpetrator in the surveillance video.  However, the items were not seized at that time.

Instead, Sergeant Simon and Detective Maddox continued their search for the man, walking towards the back of the motel.  The officers saw a man suspiciously exit room 207 and reenter after seeing them.  They knocked on the door of room 207, and the man answered.  Through the opened door, the officers saw King sitting on the bed, and they arrested him.  During a search of King's person incident to the arrest, they recovered a motel key to room 213 and approximately $106.00 from his pocket.  The officers returned to room 213 and seized the clothing items observed earlier.

Crawford and McKinley were separately transported to the motel where they both positively identified King as the man who robbed the store.  Later, at the police station, after being informed of his *Miranda* rights, King waived his rights and provided a written statement.  In the statement, King admitted taking money from the register at the Chevron, but he denied possessing a gun.  He claimed he never threatened to shoot or told Crawford he had a gun.

3

King was called to trial before a jury on May 23, 2005.[5]  On that same day, his counsel filed motions to suppress the evidence, his confession and the identification.[6]  Prior to trial the following day, the Trial Court held a hearing on the motions, which were denied.[7]  Upon completion of trial, the jury found King guilty as charged of first degree robbery.[8]

On June 2, 2005, the State filed a multiple offender bill charging King with eleven prior convictions.[9]  King's counsel filed an answer and motion to quash the multiple bill based on numerous alleged errors in the evidentiary support.[10]  Counsel also filed motions for new trial and for post-verdict judgment of acquittal.[11]

At a hearing held August 11, 2005, the Trial Court denied King's post-conviction motions and adjudicated him to be a third felony offender.[12]  The Court sentenced King to serve life in prison without benefit of parole, probation, or suspension of sentence.  The Court also denied counsel's oral

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 5/23/05; St. Rec. Vol. 2 of 6, Trial Transcript, 5/23/05; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 5/23/05.

[6]*Id.*; St. Rec. Vol. 2 of 6, Motion to Suppress Evidence, 5/23/05; Motion to Suppress the Confession, 5/23/05; Motion to Suppress Identification, 5/23/05.

[7]St. Rec. Vol. 1 of 6, Motion Hearing and Trial Minutes, 5/23/05; St. Rec. Vol. 3 of 6, Motion Hearing and Trial Transcript, 5/24/05.

[8]*Id.*; St. Rec. Vol. 3 of 6, Motion Hearing and Trial Transcript, 5/24/05; St. Rec. Vol. 4 of 6, Motion Hearing and Trial Transcript (continued), 5/24/05.

[9]St. Rec. Vol. 2 of 6, Multiple Bill, 6/2/05; *see also*, St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 6/10/05.

[10]St. Rec. Vol. 2 of 6, Answer and Motion to Quash Multiple Offender Bill, 8/11/05.

[11]St. Rec. Vol. 2 of 6, Motion for New Trial, 8/11/05; Motion for Post Verdict Judgement of Acquittal, 8/11/05.

[12]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes (4 pages), 8/11/05.

4

motion to reconsider the sentence and granted his motion for leave to appeal.  The Court also issued written reasons for its adjudication on August 18, 2005.[13]

On direct appeal, which was delayed by Hurricane Katrina,[14] King's counsel raised three assignments of error:[15] (1) the trial court erred in denying the motion to suppress the evidence seized from the hotel room without a warrant;(2) the State failed to prove beyond a reasonable doubt that King was the same person convicted in the prior offenses relied upon at the multiple offender adjudication; and (3) the evidence was not sufficient to prove the elements of first degree robbery. King also filed a supplemental brief in which he raised additional argument in support of the first two counsel-raised claims, including that he was arrested without probable cause which led to the unlawful seizure of the evidence, which should have been suppressed.[16]

On May 4, 2007, the Louisiana First Circuit Court of Appeal affirmed the conviction and vacated the habitual offender adjudication and sentence.[17]  The Court found no merit to the claims alleging insufficient evidence and error in the denial of the motion to suppress.  However, as for the challenge to the multiple offender adjudication, the Court found that the State failed to meet its burden of proving King's identity with regard to the second predicate offense, the June 2, 2000 conviction for burglary of an inhabited dwelling in 14th Judicial District Case No. 00-CR-003733. The Court remanded the matter for further proceedings.

---

[13]St. Rec. Vol. 2 of 6, Reasons for Adjudication, 8/18/05.

[14]St. Rec. Vol. 2 of 6, Per Curiam Order, 6/19/06.

[15]St. Rec. Vol. 6 of 6, Appeal Brief, 2006-KA-1994, 11/9/06.

[16]St. Rec. Vol. 6 of 6, *Pro Se* Supplemental Brief, 12/12/06.

[17]St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2006-KA-1994, 5/4/07.

On remand, the Trial Court held two additional hearings on the multiple bill.[18]  On November 21, 2007, the Court again found him to be a third offender and sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.[19]   The Court also issued written reasons for its adjudication that same day.[20]

On appeal from the adjudication and sentencing, King's counsel raised two assignments of error:[21] (1) the Trial Court erred in finding King to be a third offender where the State failed to prove that the plea of guilty to the 2000 predicate offense was knowingly and voluntarily made; and (2) the Trial Court erred in finding that the State established that the 1989 conviction was not time-barred because of the inadequate proof that the 1998 plea was knowingly and voluntarily made. King moved for and was granted leave to file a *pro se* supplemental brief; however, no such brief was ever filed.[22]

The Louisiana First Circuit affirmed the multiple offender adjudication and the sentence on June 6, 2008, finding no merit to either claim.[23]  On March 27, 2009, the Louisiana Supreme Court denied King's related writ application without stated reasons.[24]  King's conviction became final 90 days later, on June 25, 2009, when he did not file a writ of certiorari in the United States Supreme

---

[18]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 6/29/07; Multiple Bill Hearing Minutes, 11/21/07; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 6/29/07; Multiple Bill Hearing Transcript, 11/21/07.

[19]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 11/21/07; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 11/21/07.

[20]St. Rec. Vol. 2 of 6, Written Reasons for Adjudication, 11/27/07.

[21]St. Rec. Vol. 6 of 6, Appeal Brief, 2008-KA-0171, 3/10/08.

[22]St. Rec. Vol. 6 of 6, Motion to Supplement, 3/13/08; 1st Cir. Order, 2008-KA-0171, 4/1/08.

[23]*State v. King*, 2008 WL 2330014, at *1; St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2008-KA-0171, 6/6/08.

[24]*State v. King*, 5 So.3d 139 (La. 2009); St. Rec. Vol.5 of 6, La. S. Ct. Order, 2008-KO-1598, 3/27/09; La. S. Ct. Letter, 2008-KO-1598, 7/16/08 (showing postmark of 7/7/08).

Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)).

## II.     Federal Petition

On April 27, 2010, the clerk of this Court filed King's petition for federal habeas corpus relief, in which he raised three grounds for relief:[25] (1) his Fourth Amendment rights were violated when the state courts failed to suppress the evidence seized without a warrant; (2) his Due Process rights were violated where there was insufficient evidence to establish him to be a third offender; and (3) his Due Process rights were violated because there was insufficient evidence to support the conviction.

The State filed an answer and memorandum in opposition to King's petition arguing that his claims are without merit, and he is not entitled to relief.[26]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court under the federal

---

[25]Rec. Doc. No. 1.

[26]Rec. Doc. Nos. 11, 12.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on March 18, 2010.[28]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The record demonstrates, and the State concedes, that the petition was timely filed and his claims have been exhausted.  None of the claims are in procedural default.  The Court will proceed to address the merits of King's claims.

## IV.   Standards of Review of the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed King's federal habeas petition on April 27, 2010, when pauper status was granted.  King dated his signature on the petition and memorandum in support on March 18, 2010.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.    Evidence Not Suppressed in Violation of Fourth Amendment

King alleges that the police officers were not entitled to seize the clothing found in room 213 without a warrant because no exception to the warrant requirement was present. He argues that there was no exigent circumstance preventing them from obtaining a warrant once he was detained and the hotel room was secured. He claims that the items seized in violation of the Fourth Amendment should have been excluded from trial.

King's counsel first raised this claim in the motion to suppress heard on the morning before trial began. The Trial Court denied the motion to suppress finding that the seizure was proper since the officer recognized at his first viewing that the items had an evidentiary value.[29]

When the claim was reurged by counsel on direct appeal, the Louisiana First Circuit also denied relief finding no error in the denial of the motion to suppress. The Court resolved that the

---

[29]St. Rec. Vol. 3 of 6, Motion Hearing and Trial Transcript, p. 63, 5/24/05.

items were in plain view when the room was first viewed during the exigent circumstances of the pursuit of the suspect.  The Court held, as did the Trial Court, that the fact that the officers delayed the actual seizure did not change the fact that the items were properly seized as having been in their plain view.  The Court also found that the evidence was not critical to the case, since King did not challenge his identity as the perpetrator.  The other evidence of guilt, such as the eyewitness testimony and his confession, was sufficient to support the conviction.  This was the last reasoned opinion on this issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Fourth Amendment violations are generally not cognizable on federal habeas review.  *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id.*, 428 U.S. at 494.  A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert.*

*denied*, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.  *Janecka*, 301 F.3d at 320-21.  Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply.  *Id*., at 320.  The Fifth Circuit has also held that the *Stone v. Powell* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also*, *Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).  Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v.*

12

*Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting referenced Report and Recommendation).  King does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims, and as will be shown he received appropriate review in the state courts.

In this case, King raised his Fourth Amendment claim in a pretrial motion and on direct appeal.  As outlined above, the state trial court denied the motion to suppress finding that the evidence was properly seized under the circumstances.  The Louisiana First Circuit also denied his claim on direct appeal, as did the Louisiana Supreme Court in his subsequent writ application.

The record demonstrates that King was provided with ample opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful.  Contrary to his suggestion, the facts surrounding the Fourth Amendment arguments he makes are not in dispute, although he disagrees with the legal conclusions resolved against him.

After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994).  Each of the state courts considered and reviewed his arguments finding them to be without merit. *Accord*, *Ylst*.  The review at all levels of the state courts was sufficient to meet due process requirements.

King is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of King's Fourth Amendment claim here.

**VI.**     **Insufficient Evidence to Support the Multiple Offender Adjudication**

King alleges that the evidence was insufficient to support the multiple offender adjudication. He specifically alleges that, with respect to the 1989 offense, the evidence did not prove his identity beyond a reasonable doubt.  He contends that neither the arrest card, bearing the fingerprints relied upon by the State, had a police item number or a victim's name to be matched to the bill of information under which the conviction was obtained.  He also argues that the arrest dates did not match the bill of information.

He also asserts that the documentation used to address the 2000 conviction was wrought with deficiencies.  Specifically, he alleges that the arrest register, fingerprint, and mug shot information were dated after the plea of guilty which could not be used to identify the person who entered the earlier plea of guilty.  He contends that the documents do not serve to identify the related bill of information, victim, or date of arrest.  Under a broad reading, King also claims that the State did not link any of the other convictions to him to support the life sentence.

King's counsel raised the sufficiency of the evidence in both his first direct appeal and the appeal from the second adjudication after the original adjudication was vacated.  In the direct appeal, the Court considered the sufficiency of the evidence related to the 1989 and 2000 burglary convictions used in the multiple offender adjudication.  As for the 1989 conviction, "predicate 1" as it was referred to, the Court held that the evidence clearly identified King as the same person convicted therein, including his full name, date of birth, gender, and race.  The Court also noted that the evidence included booking photographs of King at the time of his arrest for that offense.  The Court placed no relevance in the date discrepancies on the arrest register and bill of information, finding that the evidence established that it was the same arrest and charge.

14

With regard to the 2000 burglary, "predicate 2," the Louisiana First Circuit held that the State met its burden of proving the existence of that conviction. It, however, determined that the State failed to meet its burden of proving that the person convicted at that time was King.

In revisiting the evidence related to the multiple offender adjudication, the Court resolved that the State again met its burden of proving the predicate 1 offense and in identifying King to be the same person. The Court referenced the supporting evidence to be the certified copies of the bill of information, court minutes, and the fingerprint card from the related arrest.

With regard to "predicate 2," the 2000 burglary, the Court resolved in the second appeal that the State successfully met its burden of proving the conviction and the identity of the person convicted in the prior offense to be King. The Court pointed to the certified copies of the bill of information, court minutes, the guilty plea form, the mug shots, and the fingerprint card from the arrest. The court went on to list other documentary evidence identifying King and the expert testimony presented to confirm the fingerprint comparisons.

The Court determined that King had not challenged the sufficiency of the foregoing evidence. However, the Court proceeded to address King's tangent claim that the State had not established the validity of the guilty pleas to the prior offenses. He argued in that appeal that the State failed to prove that the guilty pleas were voluntarily and knowingly made. The Court confirmed King's suggestion that, in 2000, King was charged with simple burglary of an inhabited dwelling, but the plea documents and transcript indicated that he entered a plea of guilty to just simple burglary. The Court resolved that the discrepancy was irrelevant since the transcript and the record indicated that King entered his plea of guilty to the lesser offense of simple burglary. The Court went on to hold that King's prior conviction was based on a valid guilty plea and that King

15

did not meet his burden of establishing an infringement of his rights in the 2000 proceeding to counter the State's evidence.

The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the court to determine whether, after identifying the elements of the charge as defined by the State and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charge to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000); *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Shelton*, 621 So.2d 769 (La.1993); *State v. Staggers*, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (*citing State v. Davis*, 829 So.2d 554 (La. App. 5th Cir. 2002)); *State v. Warfield*, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. *State v. Staggers*, 2003 WL 22438958 at *6. However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records. *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), *writ denied*, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural

irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

*State v. Shelton*, 621 So.2d at 779 (footnotes omitted).

King seeks review of the state courts' determination that he is a third multiple offender based on his allegation that the State's identification evidence was insufficient to establish him as the person previously convicted in 1989 and 2000 or to establish the validity of the 2000 guilty plea.

As outlined above, the Trial Court and the Louisiana First Circuit determined that the evidence presented by the State identified King as the same person who entered pleas of guilty to the 1989 and 2000 robbery offenses and that the records demonstrated that the pleas were knowingly and voluntarily made. King has pointed to nothing in the record to refute these findings of fact that has not already been addressed and resolved by the state courts in reaching their conclusions. Instead, these findings are supported by the record and transcripts, including the documents referenced therein. The findings are supported by the record and are entitled to deference.

The transcript from the June 29, 2007, hearing on the multiple bill demonstrates that the fingerprints in the records from the prior convictions matched King's fingerprints.[30] The State also presented mug shots taken of King in connection with the 2000 conviction which were used to

---

[30]St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, pp. 8-9, 12, 6/29/07.

confirm his identity.[31]   The State also introduced evidence to show that King was assigned an

identification number by the Louisiana Department of Corrections which was used during each of

his prior Louisiana convictions and which contained his vital information, including his social

security number; this established that King was the same person convicted and sentenced on the

relevant prior convictions.[32]   These and other court records were used to link King as the same

person involved in the prior convictions.[33]   These records included docket sheets, transcripts, plea

forms, fingerprint cards and mug shots.[34]

The evidence, considered in the light most favorable to the prosecution, was sufficient for

the state courts' to find that the prior felony convictions were appropriate as a basis to enhance his

sentence under the Louisiana habitual offender laws.   The state courts' denial of relief on this claim

was not contrary to, or an unreasonable application, of Supreme Court precedent.   King is not

entitled to federal habeas corpus relief on this claim.

**VII.**   **Insufficient Evidence to Support the Conviction**

King alleges that the evidence was not sufficient to support his conviction for first degree

robbery, because the State failed to prove that he threatened Crawford with a gun.   He argues that

Crawford's initial reaction was to block his access to the cash drawer, which he claims belies any

suggestion that she was fearful that he had a gun.

King and his counsel raised these arguments on direct appeal to the Louisiana Fourth Circuit.

The Court held that the evidence clearly demonstrated that King took cash from Crawford at the

---

[31]*Id.*, p. 11.

[32]*Id.*, pp. 15–18.

[33]*Id.*, pp. 18-20.

[34]*Id.*, pp. 8-20; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, p. 3, 7-8, 11/21/07.

Chevron. The Court also held that Crawford's testimony was sufficient to show her subjective belief that King was armed with a dangerous weapon. The Court also noted that it was within the jury's power to accept Crawford's testimony as credible and true in reaching their verdict. This was the last reasoned opinion on the issue.

As outlined in detail above, *Jackson v. Virginia*, 443 U.S. at 307, requires the court to determine whether, after identifying the elements of the charge as defined by state and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charge to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, No. 09-30164, 2011 WL 134951, at *3 (5th Cir. Jan. 14, 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See Cullen*, 131 S. Ct. at 1398 (review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits); *see also*, *McDaniel v. Brown*, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also*, *Jackson*, 443 U.S. at 319 (noting that

it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).  A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  *Brown v. Cain*, No. 98-31155, 2000 WL 34548371, at *6 (5th Cir. May 31, 2000); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

King alleges that the evidence was insufficient to support the finding that Crawford reasonably believed that he had a gun during the robbery.  Under Louisiana law, proof of first degree robbery requires a showing that the defendant took something of value from another while leading the victim to reasonably believe he was armed with a dangerous weapon.  La. Rev. Stat. Ann. § 14:64.1; *State v. Hurd*, 917 So.2d 567, 569 (La. App. 5th Cir. 2005).  Relevant to this case, the statute requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances.  *State v. Boyance*, 924 So.2d 437, 442 (La. App. 3rd Cir. 2006) (citing *State v. Fortune*, 608 So.2d 148, 149 (La.1992)).

At trial, Terry Crawford, the victim, testified about the events of Sunday, February 1, 2004. She stated that King was present in the store as she joked and conducted other transactions with him and other customers.[35]   As other customers left and Alfred T. "Buck" McKinley, Sr., a regular customer, went to the restroom, King approached the counter with a beer to purchase.  As she tried to hand him his change, he told her to give him all the money or he would shoot.[36]  He said this as he reached into the waistband near the front pocket.[37]   Because of the earlier light-hearted conversation and because he was so calm, she thought he was teasing her.[38]  He then lunged over the counter towards the drawer, which she managed to cover.[39]  She instinctively reached over the top of him, and they began to struggle.  She called out for McKinley to assist her.  King continued to grab for money from the drawer under her.[40]  As he left, McKinley came out and she called 911. McKinley ran out after him.

She also testified that she later went next door with police and identified King as the person who robbed her.[41]  She also identified him at trial.  She further stated that, when he told her he would shoot while he reached for his waistband and then lunged over the counter, she realized the possibility that he had a gun.[42]

---

[35]St. Rec. Vol. 4 of 6, Motion Hearing and Trial Transcript (continued), p. 161, 5/24/05.

[36]*Id*., pp. 161-62.

[37]*Id*., p. 162, 163.

[38]*Id*., p. 162.

[39]*Id*., pp. 162, 163.

[40]*Id*., p. 163.

[41]*Id*., pp. 165-67.

[42]*Id*. p. 168.

The jury also heard the testimony of Alfred T. "Buck" McKinley, Sr., who relayed the cordial nature of the minutes prior to the robbery.[43]  He recalled and described King as wearing a "Baker Tools" baseball cap and a t-shirt from a crawfish boil for a company that also was in the oil industry.[44]  While he was in the restroom, he heard Crawford yell out that she was being robbed.[45]  As he came out, he saw King running out the door.

McKinley also identified King in the courtroom and the hat and t-shirt seized from the hotel room.[46]  He also recalled that he later was taken to the motel next door, where he identified King as the person who robbed Crawford.[47]

Under Louisiana law, direct testimony by the victim that she believed the perpetrator was armed may support a conviction for first degree robbery.  *State v. Gaines*, 633 So.2d 293, 300 (La. App. 1st Cir.1993) (citing *State v. Fortune*, 608 So.2d at 149).  However, no weapon need ever be seen by the victim or witnesses or recovered by the police for the trier of fact to be justified in finding that it was reasonable for the victim to believe that the perpetrator was armed.  *See State v. Collier*, 909 So.2d 654, 658 (La. App. 2nd Cir. 2005) (citing *State v. Elam*, 312 So.2d 318 (La. 1975) and *State v. Harrison*, 501 So.2d 1041 (La. App. 2nd Cir. 1987)).

In this case, Crawford testified that King's statements and actions led her to believe that he had a weapon in the waist of his pants.  Louisiana law did not require that she see a weapon or that

---

[43]St. Rec. Vol. 3 of 6, Motion Hearing and Trial Transcript, pp. 119-20, 5/24/05.

[44]*Id*., pp. 119-20.

[45]*Id*., p. 120.

[46]*Id*., pp. 121-22.

[47]*Id*., pp. 124.

one be found.  Apparently, the jury found this testimony to be credible and that determination will not be second-guessed.

Thus, considering the evidence presented at trial in the light most favorable to the verdict, a reasonable jury could have found that King robbed Crawford and that Crawford reasonably believed that he was carrying a weapon during the robbery.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of the Supreme Court precedent found in *Jackson* at its progeny.  King is not entitled to relief on this claim.

## VIII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Christopher King's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[48]

New Orleans, Louisiana, this 30th day of June, 2011.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[48]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.